# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF THE INTERIOR, DAVID BERNHARDT, in his official capacity as Acting Secretary of the Department of the Interior, and as Deputy Secretary of the Department of the Interior,<br><br>    Federal Defendants. | Civil No. 1:18-cv-00546-RCL |

## STATE OF UTAH'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT

The State of Utah (the "State") moves this Court to grant the State intervention as a matter of right in this matter under Rule 24(a) of the Federal Rules of Civil Procedure, or in the alternative, permissive intervention under Rule 24(b). As required by Local Civil Rule 7(m), the State has conferred with counsel for all parties. Plaintiff, the Ute Tribe of the Uintah and Ouray Reservation, opposes the State's motion. The Federal Defendants indicate that as to the State's motion under Rule 24(a), they will respond at a later date, and take no position as to the State's motion under Rule 24(b).

## INTRODUCTION

Plaintiff's Complaint alleges the Federal Defendants violated several statutes and breached their trust and fiduciary obligations to Plaintiff by mismanaging trust assets, specifically the lands of the original Uncompahgre Reservation. Compl., ECF No. 1 at 2. Plaintiff also claims the Federal Defendants' administrative decision denying Plaintiff's request to restore the original Uncompahgre Reservation to Plaintiff was arbitrary and capricious. *Id.*

The State should be granted intervention as of right. Its motion is timely, because the case is in its beginning stages. The Federal Defendants responded to the Complaint in a motion to dismiss only recently, Fed. Defs.' Mot. to Dismiss, ECF No. 35, and Plaintiff has not yet responded to this motion. The State has substantial interests, including sovereign interests, in the management of hundreds of thousands of acres of public land within its borders. Management of these lands has direct and indirect economic impacts on the State and its citizens and implicates property rights held in trust by the State to support schools and many other governmental services. Disposition of this matter in favor of Plaintiff would impair the State's ability to protect and manage these interests. Such a disposition could deprive the State of substantial revenue and jeopardize the full use of the property rights the State holds for the benefit of all Utahns.

Intervention is also necessary because the parties cannot adequately represent the State's unique interests.

## FACTUAL BACKGROUND[1]

The original Uncompahgre Reservation is located entirely within the State of Utah, specifically in Uintah, Duchesne, and Carbon Counties ("the Counties"). *See* Ex. A, Map. Citizens of Utah live, work, travel, and recreate on these lands. Most of the area is owned by the United States of America and managed by the Department of the Interior, with substantial State and some fee inholdings. Ex. A.

The area is rich with oil and gas deposits. Most jobs in the Counties are related to the mineral extraction industry.[2] The Utah Departments of Natural Resources and Environmental Quality regulate the development of oil and gas resources (and their impacts on air and water quality) throughout the State. *See* Utah Code Ann. Titles 40 and 19. The State also receives federal mineral royalties derived from mineral deposits in the area, including on the original Uncompahgre Reservation. In 2017, the State received approximately $73 million in federal mineral royalties, and over $1.5 billion over the last 10 years.[3] In Uintah County alone, mineral royalties generated from development on the original Uncompahgre Reservation over the past 10 years totaled $276 million.[4] These funds are used to provide a wide variety of governmental services to citizens, including education, water conservancy, fire suppression, recreation, economic development, health, human services, animal control, and transportation. The State and

---

[1] For purposes of this motion, the State adopts, by reference, the Relevant Factual Allegations in the Federal Defendants' Motion to Dismiss, ECF No. 35 at 3-12.

[2] *See* https://jobs.utah.gov/wi/data/library/employment/employmentdetail.html (last visited Feb. 12, 2019).

[3] *See* U.S. Dept. of the Interior Natural Resources Revenue Data: https://revenuedata.doi.gov/explore/UT/ (last visited Feb. 12, 2019).

[4] www.udot.utah.gov/main/f?p=100:pg:0:::1:T,V:135 (last visited Feb. 12, 2019).

Counties also have transportation rights-of-way to thousands of miles of roads within the boundaries of the original Uncompahgre Reservation.[5]

In addition, the Utah School and Institutional Trust Lands Administration ("SITLA") owns approximately 219,000 acres of land within the original Uncompahgre Reservation.[6] A substantial percentage of SITLA's annual revenues are derived from oil and gas development. [7] Approximately sixty percent of SITLA's producing oil and gas wells are located on lands within the exterior boundaries of the original Uncompahgre Reservation.[8] Over the past ten years, more than $350 million have been derived from SITLA's lands within the original Uncompahgre Reservation and administered in trust to fund Utah public schools.

## LEGAL BACKGROUND

Rule 24 of the Federal Rules of Civil Procedure provides for both intervention as of right and permissive intervention. Rule 24(a) states, in relevant part:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

This Circuit has held that qualification for intervention as of right depends on the following four factors:

> (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a

---

[5] http://co.uintah.ut.us/document_center/GIS/2018.pdf (last visited Feb. 12, 2019).

[6] *See* https://trustlands.utah.gov/resources/maps/gis-data-and-maps/surface-and-mineral-maps/ (last visited Feb. 12, 2019).

[7] *See* http://168.178.6.48/agencydocuments/Annual%20Reports/FY2018-Annual%20Report.pdf (last visited Feb. 12, 2019); http://168.178.6.48/agencydocuments/Annual%20Reports/FY2014-Annual%20Report.pdf (last visited Feb. 12, 2019).

[8] *See* https://trustlands.utah.gov/resources/maps/gis-data-and-maps/surface-and-mineral-maps/.

practical matter impair or impede the applicant's ability to protect that interest"; and (4) whether "the applicant's interest is adequately represented by existing parties."

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citation omitted). In addition, a party seeking to intervene as of right must also demonstrate it has standing under Article III of the Constitution. *Id*. at 732.

## I.      The State has standing.

To establish Article III standing, a prospective intervenor must show an injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61. The State has standing in this case because of its sovereign interest in the disposition of lands within its borders. "A government's loss of sovereignty over land within its jurisdiction is a legally protectable interest." *Akiachak Native Community v. U.S. Dep't of Interior*, 584 F.Supp.2d 1, 6 (D.D.C. 2008) (citing *City of Sault St. Marie v. Andrus*, 458 F. Supp. 465, 468 (D.D.C. 1978)).

A decision in Plaintiff's favor would affect and potentially jeopardize those interests and harm the State and its citizens, causing a significant, irreparable injury in fact. The State may lose the sovereign right to enforce certain land use, natural resource management, environmental, health, and public safety regulations on its land. Its citizens may lose free access to their lands and the right to recreate and travel within the area. The State would no longer receive federal mineral royalty revenues, resulting in the loss of tens of millions of dollars annually.[9] If SITLA's access to its parcels within the original Uncompahgre Reservation were curtailed, it could lose a substantial portion of its annual revenues, depriving Utah's school children of a significant

---

[9] *See* https://revenuedata.doi.gov/explore/UT/.

source of funding.[10] These injuries would be avoided by a decision denying Plaintiff's claims. Thus, the State has standing in this matter.

**II.     The State is entitled to intervene as of right.**

The Court should grant the State's motion to intervene as of right because the State meets all four criteria under Rule 24(a). The State's motion is timely, it has strong interests in the lands and resources within its borders which will be impaired if Plaintiff succeeds in this case, and the existing parties are unable to adequately represent the State's interests.

**A.  The State's motion is timely.**

In determining whether a motion to intervene is timely, courts may consider: "(a) the time elapsed since the inception of the action, (b) the probability of prejudice to those already party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights." *WildEarth Guardians v. Jewell*, 320 F.R.D. 1,3 (D.D.C. 2017) (citation omitted). Here, the State's motion is timely. The Federal Defendants responded only recently to the complaint. ECF No. 35. Plaintiff requested an extension of several months to respond to the Motion to Dismiss, ECF No. 36, and its response is due next week. ECF No. 43. The State's intervention will not harm or prejudice any existing parties because the case is still in its early stages. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (describing potential prejudice as the core of the timeliness factor). Thus, this motion is timely.

**B.  The State has a strong interest in lands within its borders.**

The interest requirement functions "primarily [as] a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and

---

[10] *See* https://trustlands.utah.gov/resources/maps/gis-data-and-maps/surface-and-mineral-maps/.

due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). That the State is particularly

concerned with the management of land within its borders cannot reasonably be disputed.

This Circuit has held that if a court concludes the proposed intervenor has constitutional

standing, that "is alone sufficient to establish that the [party] has an interest relating to the

property or transaction which is the subject of the action." *Fund for Animals*, 322 F.3d at 735

(citation omitted). As demonstrated above, the State has a sovereign interest in the 1.2 million

acres of lands at issue in the case. *See, e.g.*, *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir.

1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject

matter of the suit . . . ."). The State also has a strong interest in the oil and gas activities within its

boundaries. The State's Departments of Natural Resources and Environmental Quality have

invested significantly in developing regulations for lands within the state, including the original

Uncompahgre Reservation. *See* Utah Code Ann. Titles 40 and 19. Likewise, the State's Division

of Wildlife Resources has invested significant time and resources into managing wildlife and

hunting in the State, including the original Uncompahgre Reservation. *See id*. Title 23. The State

also has a strong interest in maintaining its highways and roads for its citizens, enabling them to

work, travel, and recreate. In similar cases, this district has found intervenor-movants have

interests in the case justifying intervention. *See, e.g.*, *Akiachak Native Cmty.*, 584 F.Supp.2d at 7

(finding Alaska has an interest in the right to enforce land use, natural resource management,

environmental, and public safety regulations on its state lands); *WildEarth Guardians v. U.S.*

*Bur. of Land Mgmt.*, No. 12-0708, 2012 WL 12870488, at *2 (D.D.C. June 7, 2012) (permitting

Wyoming to intervene in a challenge to federal regulations because "Wyoming has an interest in

regulating coal development activities within its borders and controlling the effect of those

activities on the state's environmental quality.").

In addition, the State has significant economic interests that would be impacted by the claims Plaintiff has asserted in this case. Revenue received from federal mineral leasing within the State is shared between the federal, state, and local governments. In 2017, the federal Office of Natural Resources Revenue disbursed over $70 million to the State, and nearly $20 million from mineral production in the Counties.[11] Oil and gas leasing provides economic opportunities for Utahns through employment and contributions to decreased energy costs. Energy related employment offers high paying jobs, particularly in rural areas. This economic activity also provides indirect revenue to the State in the form of increased income and sales taxes. *See Akiachak Native Cmty.*, 2012 WL 12870488, at *2 ("Wyoming has an economic interest in the development of coal mining operations in the state."); *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 18 (D.D.C. 2010) (granting intervention to Wyoming and finding state interest in participation in the regulatory process, environmental quality within its borders, and protecting its economic stake). And, revenues from SITLA lands within the boundaries of the original Uncompahgre reservation have provided over $350 million in the past ten years to Utah's school children.

For all these reasons, the State is seriously concerned with the claims at issue in the case and has strong interests at risk in the case justifying intervention.

## C. Judgment in favor of Plaintiff would impair the State's interests

Whether a proposed intervenor is so situated that the disposition of an action may impair its ability to protect its interest is determined by looking at the practical consequences of denying intervention. *Akiachak*, 584 F.Supp.2d at 6. As discussed above, the State would suffer a

---

[11] *See* https://revenuedata.doi.gov/explore/UT/;
www.udot.utah.gov/main/uconowner.gf?n=30104930545364417.

concrete injury-in-fact if this Court were to grant the relief Plaintiff requests. Granting Plaintiff's claims would impair the economic and regulatory interests of the State. Should Plaintiff succeed, the State would lose tens of millions of dollars in mineral royalties each year.[12] The State's regulatory responsibility for the area could be disrupted. The State's and the Counties' ability to maintain rights-of-way and provide public access is also likely to be impacted. Several grazing allotments in the Counties could be affected. Recreation access could be impacted, including hunting, fishing, hiking, trail riding, and river running—all of which provide employment and revenue to the State and Counties. And, although Plaintiff alleges that it does not challenge SITLA's ownership to its parcels within the original Uncompahgre Reservation, Compl. ¶ 72, if Plaintiff succeeds in its claims, SITLA's ability to access and use these parcels may also be jeopardized. Without access, SITLA may lose a substantial portion of its annual earnings on behalf of Utah's school children.

These reasons are more than sufficient to justify intervention as of right. *See WildEarth Guardians*, 272 F.R.D. at 19 (granting a state intervention under similar circumstances and stating, "there is little doubt that resolution of this action in Plaintiff's favor would affect Wyoming's financial and socioeconomic stake . . . within its borders."); *Fund for Animals*, 322 F.3d at 735 (holding state has interest in preserving its regulating role within its borders). The Court should grant intervention because judgment in Plaintiff's favor would impair the State's interests.

### D.  Existing parties cannot adequately represent the State's interests

The existing parties are not able to adequately represent the State's interests in this case. "The burden of showing that the representation of the existing parties 'may be inadequate' is

---

[12] *See* https://revenuedata.doi.gov/explore/UT/.

'minimal.'" *WildEarth Guardians*, 320 F.R.D. at 4 (quoting *Fund for Animals*, 322 F.3d at 735). A movant need only show representation of its interest "*may be*" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted) (emphasis added). *See also Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (describing requirement as "not onerous"); *American Tel. & Tel. Co.*, 642 F.2d at 1293 (stating that a petitioner "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee"). Numerous cases in this circuit have permitted intervention by states when the federal government was already a party. *See, e.g.*, *WildEarth Guardians*, 320 F.R.D. at 5 (finding "the Federal Defendants do not adequately represent the interest of Wyoming, Colorado, or Utah"); *Akiachak Native Cmty.*, 584 F. Supp. 2d at 7 (holding that the existing federal defendants "have no clear interest in protecting Alaska's sovereignty or Alaska's interest"); *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 48 (D.D.C. 2007) ("[W]e have often concluded that governmental entities do not adequately represent the interest of aspiring intervenors."); *Atlantic Sea Island Group LLC v. Connaughton*, 592 F.Supp.2d 1, 7 (D.D.C. 2008) (allowing state to intervene as of right); *WildEarth Guardians*, 2012 WL 1280488, at *1-2 (same).

Here, while the Federal Defendants' duty runs to the interests of the American public as a whole, the State of Utah will primarily consider the interests of its own citizens. *WildEarth Guardians*, 320 F.R.D. at 5. Moreover, the Federal Defendants "have an obligation to represent the interests of the entire country," while the State is more narrowly concerned with the interests of Utahns. *Atl. Sea Island Grp.*, 592 F. Supp. 2d at 7 (citation omitted) (finding federal defendants inadequately represented state interests). The State clearly meets the minimal burden of showing current parties may not adequately represent the State's unique interests.

**III.      In the alternative, the Court should grant the State permissive intervention**

If the Court does not grant the State's intervention as of right, it should allow the State to intervene permissively. The Court has discretion to grant intervention to any party that "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The State's defense of its interest in lands within its borders shares common questions of law and fact with the main action. Moreover, the motion is timely and will not unduly delay or prejudice the adjudication of the claims in this matter, as required by Rule 24(b). Thus, if the Court does not allow the State to intervene as of right, it should grant permissive intervention.

## CONCLUSION

For the foregoing reasons, the Court should grant the State's motion to intervene.

Respectfully submitted this 13th day of February, 2019.

*/s/Alison D. Garner__*
Alison D. Garner (DC Bar No. 983858)
Assistant Attorney General
STATE OF UTAH
Office of the Utah Attorney General
160 East 300 South, 5th Floor
P.O. Box 140857
Salt Lake City, Utah 84114
(801) 366-0353
alisongarner@agutah.gov
*Counsel for Proposed Devendant-Intervenor*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2019, I filed the foregoing with the CM/ECF system, which will provide service to counsel of record.

_  Alison D. Garner  _